# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY BURRIOLA | 3:07-cv-00102-JCM (VPC) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| STATE OF NEVADA, *et al.*, | |
| Defendants. | November 7, 2007 |

This Report and Recommendation is made to the Honorable James C. Mahan, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a temporary restraining order and/or preliminary injunction (#22). Defendants opposed (#28) and plaintiff replied (#41). The court has thoroughly reviewed the record and the motions and recommends that plaintiff's motion for a temporary restraining order and/or preliminary injunction (#22) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Anthony Burriola ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#11). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights to be free from retaliation, to freely exercise his religion, to access the courts, and to send and receive mail, his Eighth Amendment right to be free from cruel and unusual punishment, his Fourteenth Amendment rights to due process and equal protection, and his rights pursuant to 42 U.S.C. § 2000cc et seq., the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id*. Plaintiff names as defendants the State of Nevada, NDOC, Glen Whorton, Darrel Rexwinkle, William Donat, James Baca, Elizabeth Walsh, Timothy Lietz, Vinson Scott, Valaree Clifton, Daniel Collier, Jason Wood, Kelly Belanger,

Robert LeGrand, Greg Cox, and Matt Tilley.[1] *Id*.

Plaintiff argues that since he filed this lawsuit, defendants have increasingly retaliated against him, which has threatened this ongoing litigation and has denied him access to the courts (#22).[2] Plaintiff claims that defendants have refused to complete plaintiff's copy requests, including documents plaintiff wanted to file as exhibits to motions in this case. *Id*. Plaintiff further argues that defendants have improperly denied him legal and general correspondence privileges with his sister and co-plaintiff, Marla Polson. *Id*. Finally, plaintiff contends that defendants have retaliated against him by refusing his requests to use a "brass slip" to send general correspondence. *Id*.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Preliminary Injunction Standard**

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief... .

18 U.S.C. § 3626(2).

---

[1] Plaintiff originally filed his complaint in the First Judicial District of the State of Nevada, in and for the County of Carson City, on January 30, 2007 (#1). Defendants removed the case to this court on March 2, 2007, pursuant to 28 U.S.C. §§ 1441 and 1443. *Id*. On June 25, 2007, the court dismissed Marla Polson as co-plaintiff (#25).

[2] Plaintiff brings a number of claims in his complaint, however, the court here sets out only the allegations in plaintiff's motion for an injunction.

2

1    The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). A prohibitory injunction preserves the status quo while litigation is pending, while a mandatory injunction provides preliminary relief well beyond maintaining that status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

**2. Temporary restraining order**

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *Brown Jordan Intern., Inc., v. Mind's Eye*, 236 F. Supp.2d 1152, 1154 (D. Haw. 2002). Moreover, it is appropriate to treat a non-*ex parte* motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE CIV. 2d § 2951 (2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

**3. Meaningful Access to the Courts**

Pursuant to the Fourteenth Amendment due process clause, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). That access must be "adequate, effective, and meaningful." *Id*. at 822. "Access to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal

3

1  liberty." *Phillips v. Hust*, 477 F.3d 1070, 1075-76 (9th Cir. 2007) (citations omitted).  To show
2  a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that
3  there was a "specific instance" in which he was denied access.  *Sands v. Lewis*, 886 F.2d 1166,
4  1171 (9th Cir. 1989).  An "actual injury" is where an official's act "hindered" the plaintiff's
5  "efforts to pursue a [nonfrivolous] legal claim."  *Phillips*, 477 F.3d at 1076.  "The injury
6  requirement is not satisfied by just any type of frustrated legal claim;" the Court has stated that
7  prisoners have a right to access to the courts only in relation to direct appeals from the convictions
8  for which they were incarcerated, habeas petitions or civil rights actions challenging the
9  conditions of their confinement.  *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).

**4. Retaliation**

11  Prisoners have a right to meaningful access to the courts, and prison authorities may not
12  penalize or retaliate against an inmate for exercising this right.  *Bradley v. Hall*, 64 F.3d 1276,
13  1279 (9th Cir. 1995).  A retaliation claim involves five elements: "(1) An assertion that a state
14  actor took some adverse action against an inmate (2) because of (3) that prisoner's protected
15  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and
16  (5) the action did not advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559,
17  567-68 (9th Cir. 2004).  Retaliation claims must be evaluated in light of the deference accorded
18  to prison officials.  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  The inmate bears the
19  burden of pleading and proving the absence of legitimate correctional goals for the alleged
20  retaliatory action.  *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

**B. Analysis**

**1. Legal Correspondence with Marla Polson**

23  Plaintiff requests that this court issue an injunction allowing plaintiff and Ms. Polson to
24  correspond under the "privileged" correspondence regulations (#22).  Defendants note that
25  plaintiff's original complaint identified Ms. Polson only as a "real-party-in-interest," and that Ms.
26  Polson was not named as a co-plaintiff until April 26, 2007, when plaintiff filed his first amended
27  complaint (#28).  On June 25, 2007, the court dismissed Ms. Polson from this action (#25).
28  Since Ms. Polson is no longer a co-plaintiff, plaintiff's argument that all mail between

4

1  plaintiff and Ms. Polson is "privileged" because she is a party to the case is moot.  Further, the
2  fact that plaintiff identifies Ms. Polson as his  "legal agent" or a member of his "litigation team"
3  does not qualify her as a privileged correspondent as defined pursuant to AR 722 (#28, Exhibit
4  B, p. 3).[3]

5        Plaintiff contends that just because this court eventually dismissed Ms. Polson as a co-
6  plaintiff in June 2007, this does not remedy the fact that defendants made the unilateral decision
7  to deny plaintiff the right to privileged correspondence with Ms. Polson even though she was
8  named as co-plaintiff (#41).  The court understands plaintiff's point that prison officials should
9  not make decisions which are the province of the court before the court can rule.  However,
10  central to the prison's decision is the fact that plaintiff and Ms. Polson attempted to circumvent
11  prison regulations regarding sending and receiving privileged mail by claiming that they hired a
12  California attorney, Brandon A. Wood, to send and receive mail.  *See* #15, Exhibit 4, Plaintiff's
13  "Attorney Verification."  Defendants' undisputed evidence reveals that neither plaintiff nor Ms.
14  Polson ever hired Mr. Wood in any capacity, that Mr. Wood had never heard of either plaintiff
15  or Ms. Polson prior to being contacted by defendant Tilley and defense counsel in April 2007, and
16  that plaintiff's claims that Mr. Wood was hired to facilitate correspondence between plaintiff and
17  Polson "are entirely false and devoid of any truth" (#28, Exhibit E).   Plaintiff is strongly
18  admonished that filing false documents with this court can result in civil and criminal sanctions,
19  including dismissal of this lawsuit.  The court absolutely will not tolerate such action.

20        **2. Likelihood of Success on the Merits**

21        To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood
22  he will succeed on the merits of his claim.  *Johnson*, 72 F.3d at 1430.  "Likelihood of success on

---

[3] There is no evidence that Ms. Polson is an elected or appointed state official, an official responsible for plaintiff's custody, a judge or official of the court, a member of the Attorney General's office, an attorney listed with a state bar association, an attorney's representative, employed by a corrections department, or a diplomatic personnel (#28, Exhibit B, pp. 3-4).  Plaintiff submits a "Power of Attorney" which purports to make Ms. Polson his "attorney-in-fact" (#22, Exhibit 2 and #41, Exhibit 2).  However, this document does not make Ms. Polson an attorney who is properly barred in any state.  Further, although plaintiff contends that he is entitled to privileged correspondence with "any" person assisting him with his legal case, plaintiff identifies no Supreme Court case which grants such a specific right.

the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

### a. Copy Work

Plaintiff claims that in retaliation for filing this lawsuit, defendant Tilley will not make copies of his legal documents, which has violated his right to access to the courts (#22). Defendants contend that plaintiff's documents contained the names of other inmates, and since inmates are not permitted to possess documents which belong to other inmates, defendant Tilley correctly refused to complete plaintiff's copy work until plaintiff removed those particular documents (#28).

Pursuant to Administrative Regulation ("AR") 722, which governs inmate legal access to courts, law library copy machines may be used only to copy "legal materials" for "current litigation" (#28, Exhibit B, p. 6). To facilitate this requirement, defendant Tilley, the NSP law library supervisor, states that he "scans," but does not read, inmate copy work prior to making copies (#28, Exhibit D). Defendant Tilley states, "When the names of other inmates are evident throughout a document, I assume that the document is either for the other inmate or that it is being photocopied for something other than a legal purpose, which brings into question the security and safety of the institution." *Id*. Defendant Tilley affirms that plaintiff's legal copy work clearly contained the names of other inmates, and he informed plaintiff those documents must be removed. *Id*. After plaintiff removed the particular documents, the rest of plaintiff's copy work was completed.[4] *Id*.

Plaintiff makes various claims that he suffered an "actual injury" (#41, p. 3). Plaintiff states that defendant Tilley's refusal to copy his documents is "causing a loss of a property interest;" however, he fails to state what that property interest is. *Id*. Plaintiff additionally contends that he has lost money because he has to send his documents out to be copied and that

---

[4] Plaintiff argues that defendants fail to explain what security issues are involved in plaintiff possessing documents with another inmate's name on them (#41). While it is true that defendants only generally refer to the safety and security of the institution, the court is aware that NDOC has this rule for fear that one inmate could blackmail another or use the information in the documents to identify physical or mental weaknesses and exploit them.

6

1  he has had to request extensions of time from the court. *Id*. The court does not consider any of
2  these "injuries" to be the kinds contemplated in *Casey*. Plaintiff has not identified a "specific
3  instance" in which the failure to obtain copies "hindered" his efforts to pursue a claim, *see Sands*,
4  886 F.2d at 1171 and *Phillips*, 477 F.3d at 1076 ; in fact, plaintiff never identifies how he planned
5  to use the refused documents or what he was trying to prove in using these documents. Nor does
6  plaintiff argue that the documents were "necessary or appropriate" in order to prosecute this
7  lawsuit. *Phillips*, 477 F.3d at 1075-76. Because plaintiff has not identified an actual injury, the
8  court concludes he is not likely to succeed on the merits of his claim with regard to the copy
9  work.

### b. Brass Slips

11  Plaintiff alleges that defendants are retaliating against him by refusing to allow him to
12  send general correspondence using a brass slip (#22). Defendants respond that only "indigent-at-
13  the-moment" inmates are entitled to send general correspondence via brass slips; since plaintiff
14  is not "indigent-at-the-moment," he does not qualify (#28). Plaintiff claims that he has always
15  used brass slips to send general mail, and that only after he filed this lawsuit did defendants bar
16  this practice (#41).[5]

17  AR 722 defines an "indigent" inmate as an inmate whose trust account balance was ten
18  dollars or less for the entire previous month, and an "indigent-at-the-moment" inmate as one
19  whose trust account balance was ten dollars or less at the time of the inmate's request, but who
20  generally retains a balance higher than ten dollars (#28, Exhibit B, p. 3). There is no limit to the
21  amount of postage an indigent or indigent-at-the-moment inmate may receive to send first class
22  *legal* mail, although the inmate must sign a brass slip to ensure that NDOC is reimbursed should
23  funds become available. *Id*., p. 15. AR 750, which governs inmate general correspondence and
24  mail, states that "appropriate postage is required unless the inmate is indigent." *Id*., Exhibit C,
25  p. 7. Indigent inmates are provided with enough postage to send two personal letters per week.

---

[5] Plaintiff submits an Exhibit 4, which appears to be copies of brass slips (#41, Exhibit 4). However, the copies are so dark, they are not legible.

7

1  *Id*. "Indigent-at-the-moment" inmates "are not eligible for free personal letters," although they
2  may use a brass slip to send general correspondence. *Id*.

3        Plaintiff submits a February 6, 2007 memorandum from the NSP mailroom officer
4  denying his general correspondence brass slip request (#41, Exhibit 6). The officer checked a box
5  on the pre-typed memorandum which states, "With regards to mail: Brass Slips can only be used
6  for Legal Mail. Resubmit with proper postage." *Id*. This statement conflicts with AR 750's
7  requirement that "indigent-at-the-moment" inmates may send general correspondence using a
8  brass slip. *See* #28, Exhibit C, p. 7. Thus, it appears that the mailroom memorandum contains
9  an incorrect statement. However, there is no evidence that this box was checked with the purpose
10 of retaliating against plaintiff. It appears to the court that this is an employee training issue that
11 defendants should address.

12       It is clear that *only* "indigent-at-the-moment" inmates may use a brass slip to send general
13 correspondence (#28, Exhibit C, p. 7). Although plaintiff claims that he was an "indigent-at-the-
14 moment" inmate at the time defendants denied his request to use a brass slip, plaintiff provides
15 absolutely no proof of this contention.[6]

16       Plaintiff either qualifies, or does not, for "indigent-at-the-moment" status; if he does, he
17 can use a brass slip, and if he does not, he should have enough money to pay for his own general
18 correspondence. Without evidence that plaintiff qualified as "indigent-at-the-moment" at the time
19 of his request but was still denied a brass slip, the court cannot conclude that plaintiff suffered
20 any adverse action that was not related to the legitimate penological goal of conserving prison
21 funds. *Rhodes*, 408 F.3d at 567-68. Further, plaintiff has no liberty interest in sending general

---

23       [6] Plaintiff also cites to N.S.R. 209.246(3)(a), arguing that it creates an "entitlement" to send general
24 correspondence via a brass slip (#41). This statute creates no such right; instead, it requires the NDOC to draft regulations which govern the criteria used to deduct money from inmate accounts. *See generally* N.R.S.
25 209.246. Section 3 states that NDOC may be reimbursed for any monies credited to the inmate's account for "postage for personal items and items related to litigation." N.R.S. 209.246(3)(a). Nowhere does this
26 statute *require* NDOC to allow inmates to send general correspondence using brass slips.
      Plaintiff also generally argues that the mandatory nature of N.R.S. 209.246, AR 722 and AR 750
27 creates a protected liberty interest or entitlement for plaintiff (#41, *citing Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989)). The mandatory language analysis was specifically abandoned by
28 *Sandin v. Conner*, 515 U.S. 472, 483-84 & n.5 (1995).

1  correspondence via a brass slip. The court cannot conclude that plaintiff is likely to succeed on
2  the merits of his retaliation claim.

### c. General Correspondence to Ms. Polson

Plaintiff next claims that defendants will not allow him to send general correspondence to Ms. Polson (#22). However, plaintiff's own evidence refutes his claim. When plaintiff sent a grievance stating that his "legal mail" to Ms. Polson had been denied, the response was that the prison did not consider it "legal mail," and that plaintiff could "buy stamps and write [Ms. Polson] anytime" he wished (#41, Exhibit 1, GR-2007-4-5366). Moreover, in response to plaintiff's complaint that defendants improperly denied plaintiff's request to use a brass slip to send correspondence to Ms. Polson, the mailroom officer stated that plaintiff could "use stamps to mail stuff to your sister" (#41, Exhibit 5).

Plaintiff argues that defendants are confiscating his mail in retaliation for his lawsuit, and submits an "unauthorized mail notification" dated August 20, 2007, which states that plaintiff's general correspondence exceeded the page limit requirements of "AR 750 1.4.1" (#41, Exhibit 3). It is interesting to the court that there does not appear to be a section 1.4.1, at least in the version of AR 750 before the court. Nor can the court find a reference to a page limit for general correspondence. The court notes that clearly, plaintiff has a constitutional right to send and receive mail, subject to reasonable limitations. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (holding that prisoners have "a First Amendment right to send and receive mail"). The defendants have not addressed the page limit requirement; thus, there is no evidence before the court as to the "reasonableness" of a page limitation on outgoing prisoner correspondence. While curious, this is not enough evidence for the court to enter an injunction. Further, there is no evidence, nor does plaintiff contend, that his speech was chilled or he suffered "actual harm" as a result of the denial of this general correspondence due to page limits.

### 2. Irreparable Injury, Balance of Hardships and Public Interest

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits of any of his claims, the court does not address the remaining elements.

The court notes that some of plaintiff's evidence indicates that it would be advisable for

9

defendants to properly train mailroom officers in the rules which apply to sending mail to avoid inconsistent and improper reasons for denial (#41, Exhibits 3 and 6). Moreover, it appears defendants should revise their forms to be consistent with their regulations. *Id*. However, it also appears to the court that plaintiff does not like the prison's rules, and has tried his best to circumvent them. Plaintiff clearly wants non-attorney Polson to assist him with his litigation, so plaintiff attempted to make Ms. Polson a "privileged" correspondent by joining her as a co-plaintiff and drafting a power of attorney, stating that she is his "attorney-in-fact." When this did not work, plaintiff – apparently fraudulently – attempted to use an attorney to send Ms. Polson mail, even though the attorney states that he knew nothing about it and had not been hired. Unhappy with the rule that he may not possess documents which belong or refer to other inmates without any clear litigation purpose, plaintiff wants to circumvent the rule by sending his copy work to Ms. Polson using his general correspondence privileges. The court will not issue an injunction under such circumstances.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that

- plaintiff's arguments that Marla Polson is a "privileged" correspondent are moot;
- plaintiff is not likely to succeed on the merits of his access to the courts claim because he has not demonstrated that he incurred "actual injury" in relation to the denial of his request to copy documents containing the names of other inmates;
- plaintiff is not likely to succeed on the merits of his retaliation claim because he failed to demonstrate that he was "indigent-at-the-moment" such that he was entitled to use a brass slip to send general correspondence; therefore, there is no evidence that defendants improperly denied his request and that plaintiff suffered adverse action for no legitimate penological reason;
- plaintiff does not have a state-created liberty interest to send general correspondence via brass slips;
- plaintiff is not likely to succeed on the merits of his retaliation claim because his own evidence reveals that he is permitted to send Marla Polson general correspondence.

As such, the court recommends that plaintiff's motion for a temporary restraining order and/or a preliminary injunction (#22) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

1  the parties may file specific written objections to this report and recommendation within ten days
2  of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and
3  Recommendation" and should be accompanied by points and authorities for consideration by the
4  District Court.
5     2.  This report and recommendation is not an appealable order and any notice of appeal
6  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's
7  judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a temporary restraining order and/or preliminary injunction (#22) be **DENIED**.

**DATED:** November 7, 2007.

*/s/ Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**