1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                          **DISTRICT OF NEVADA**
7
    | ANTHONY J. BURRIOLA,              | 3:07-CV-102 JCM (VPC) |
8   |                                   |                       |
    |              Plaintiff,           |                       |
9   |                                   |                       |
    | v.                                |                       |
10  |                                   |                       |
    | NEVADA DEPARTMENT OF              |                       |
11  | CORRECTIONS,                      |                       |
12  |              Defendant.           |                       |
13
14                              **ORDER**

15          Presently before the court is defendants' motion for summary judgment.  (Doc. # 191).  Pro

16   se prisoner plaintiff filed a response in opposition (doc. # 208), and the defendants have not filed a

17   reply.

18          Also before the court are plaintiff's objections to a magistrate judge order.  (Doc. # 193).[1]

19   The defendants filed a response in opposition (doc. # 195), and plaintiff has not filed a reply.

20          Also before the court is plaintiff's motion for order to show cause.  (Doc. # 202).

21          Also before the court is plaintiff's motion for order to show cause.  (Doc. # 203).

22          Also before the court is plaintiff's motion to strike.  (Doc. # 206).

23   **I.      Background**

24          This case is on remand from the Ninth Circuit.  A brief factual and procedural background

25   is necessary for resolution of the pending motions.

26
27   ─────────────────
28        [1]  Plaintiff filed an errata to the objections.  (Doc. # 194).

**James C. Mahan**
**U.S. District Judge**

1    *A.    Procedural Background*

2    *Pro se* prisoner plaintiff Anthony J. Burriola is an inmate in the custody of the Nevada

3    Department of Corrections ("NDOC"). Plaintiff and his sister, Marla Polson, originally commenced

4    this action in Nevada state courts on or about February 8, 2007. The defendants removed the case

5    to this court.

6    The court issued its screening order and dismissed all claims brought by Polson. (Doc. # 25).

7    Following significant motion practice, none of which is relevant here, defendants filed a motion for

8    summary judgment. (Doc. # 128). The court granted full summary judgment in favor of defendants.

9    With respect to counts 5, 6, and 7, the court found that plaintiff failed to exhaust his administrative

10   remedies prior to filing the suit. (Doc. # 151). With respect to plaintiff's retaliation claim in count

11   1, the court granted summary judgment finding that plaintiff had failed to demonstrate that NDOC's

12   categorical ban on typewriters was not related to a legitimate correctional goal. (*Id.*).

13   Plaintiff appealed to the Ninth Circuit. (Doc. # 158). The Ninth Circuit remanded as

14   follows:

15   To the extent Burriola's claims in Counts 5-7 were premised on conduct occurring after the
     filing of his original complaint, the district court should have determined whether those
16   claims were exhausted as of the filing date of the amended complaint, not as of the filing
     date of the original complaint. *See Rhodes v. Robinson* ("*Rhodes II*"), 621 F.3d 1002- 1005-06
17   (9th Cir. 2010). Because *Rhodes II* clarified *McKinney v. Carey*, 311 F.3d 1198 (9th Cir.
     2002) (per curiam) after the district court dismissed Burriola's claims we vacate and remand
18   to the district court to apply *Rhodes II* in the first instance.

19   . . .

20   Count 1 concerns Burriola's claims for damage to his typewriter and confiscation of a
     replacement typewriter. . . . However, the district court erred in granting summary judgment
21   as to Burriola's retaliation claims arising from the confiscation of a replacement typewriter.
     It considered whether the prison's categorical ban on typewriters was reasonably related to
22   a legitimate correctional goal. *See Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th
     Cir. 2011). But the categorical ban is unrelated to the confiscation of Burriola's typewriter,
23   which occurred in June 2006, months before the enactment of the categorical ban. *See Nev.
     Dep't of Corr. v. Cohen*, 581 F.Supp.2d 1085, 1087 (D. Nev. 2008). Therefore, we vacate
24   the judgment as to Count 1 regarding Burriola's replacement-typewriter retaliation claim.

25   (Doc. # 165).

26   Following the remand, this court ordered supplemental briefing on whether counts 507 were

27   still unexhausted after *Rhodes II*. (Doc. # 170). Following the briefing, the court reinstated the

28

James C. Mahan
U.S. District Judge

- 2 -

1    claims in count 5 that relate directly to grievance #2007-4-801.  (Doc. # 175).  The court found that

2    all other claims in counts 5-7 were unexhausted under *Rhodes II*.  The court then granted leave to

3    file summary judgment on the remaining claims, which is the present stage in this litigation.

4              B.     *Factual Background*

5              The court will further discuss the factual background relating to count 1–the alleged wrongful

6    taking of a typewriter–separate from the factual background relating to count 5–alleged

7    unconstitutional prohibition on using the legal mail system at the prison.

8                        1.      Facts Underlying Count 1

9              Plaintiff had a typewriter, a Brother ML-500 model, that had a memory well-above the

10   amount permitted by NDOC regulations.  Plaintiff represents that he received this typewriter at a

11   time when it was approved property, and that the typewriter had been "grandfathered-in" when

12   NDOC issued new property regulations.

13             The typewriter began to malfunction in May 2006, and plaintiff sent it out for repair to a

14   company called AMB/Hesperia Typewriter ("ABM").  Plaintiff subsequently sent a letter to ABM

15   that not only requested repair of the damaged typewriter, but also requested an upgrade of the

16   memory capacity.  In an invoice dated May 13, 2006, AMB informed plaintiff that his Brother ML-

17   500 typewriter was not worth repairing because of the costs associated with the repairs.  The Brother

18   ML-500 typewriter was replaced with a model EM-630 typewriter.

19             In a memorandum addressed to plaintiff dated June 29, 2006, Associate Warden of

20   Operations Vinson Scott informed plaintiff of the following:

21             Per regulations, typewriters with a memory are not authorized.  Inmates currently in
             possession of Typewriters with 20,000 character memory or less may be retained by the
22            inmate.  Reduction will occur through attrition.  If and when your typewriter fails you will
             no longer be allowed a typewriter with a memory.
23

24   (Doc. # 191, Ex. D, memo dated June 26, 2009).  In addition to the memorandum, the relevant

25   regulation at the time, Administrative Regulation ("AR") 711, specifically prohibited items sent out

26   for repair from being exchanged for a different make or model.  (*Id.*, Ex. E, AR 711, p. 8).

27   . . .

28

The EM-630 typewriter sent to plaintiff as a replacement for his defective ML-500 typewriter had a memory that exceed the 20,000 character limit.  Defendant Lietz contacted AMB to confirm that the model EM-630 typewriter had a memory capability in excess of 20,000 characters.

On or about June 30, 2006, Lietz issued plaintiff an unauthorized property notification.  Plaintiff was not permitted to receive the typewriter.

2.        Facts Underlying Count 5

AR 722 governs inmate legal access.  Under AR 722, separate systems have been established for general mail and legal mail.  Legal mail is considered correspondence of a legal nature that is mailed by an authorized person or to an authorized person.  This mail is not subject to the same restrictions as general correspondence.

On or about July 21, 2006, plaintiff received mail marked as "legal mail" from Polson.  At that time, plaintiff was warned it was improper for Polson to sent him mail marked as "legal."

In January 2007, Polson again sent plaintiff "legal mail."  On January 3, 2007, plaintiff was issued a notice of charges for unauthorized use of mail system due to Polson improperly sending plaintiff "legal mail" after plaintiff had been warned that Polson was not authorized to send him "legal mail." Before issuing the notice of charges, defendant Tilly contacted Janet Traut at the Office of the Attorney General to ensure plaintiff had no open cases with Polson as a co-party.

At a subsequent disciplinary proceeding, plaintiff was found guilty of a G-14 violation, failure to follow rules and regulations, and a MJ-31 violation, unauthorized use of mail.  After his disciplinary proceeding, plaintiff continued to be permitted to correspond with Polson using the protocol for general mail as contained in AR 750.  Plaintiff was prohibited only from using the legal mail protocol when corresponding with Polson.  Plaintiff was free to send correspondence to Polson using stamps and continued to speak with her on the phone.

**II.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a

James C. Mahan
U.S. District Judge

- 4 -

1   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

2   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

3   323–24 (1986).

4        In determining summary judgment, a court applies a burden-shifting analysis.  "When the

5   party moving for summary judgment would bear the burden of proof at trial, it must come forward

6   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

7   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

8   of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

9   F.3d 474, 480 (9th Cir. 2000) (citations omitted).

10       In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

11  moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

12  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

13  make a showing sufficient to establish an element essential to that party's case on which that party

14  will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

15  fails to meet its initial burden, summary judgment must be denied and the court need not consider

16  the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

17       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

18  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

19  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

20  party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

22  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

23  Cir. 1987).

24       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

25  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

26  (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

27  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1   for trial.  *See Celotex Corp.*, 477 U.S. at 324.

2         At summary judgment, a court's function is not to weigh the evidence and determine the

3   truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*,

4   477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

5   inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is

6   merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

7   249–50.

8   **III.   Discussion**

9         The court will address the two remaining counts in turn.

10      *A.   Count 1*

11        Plaintiff argues that NDOC officials retaliated against him for filing lawsuits by taking away

12  his typewriter.  Plaintiff argues that he had used the typewriter in question to file lawsuits and file

13  motions in those lawsuits, and that defendants retaliated by confiscating his typewriter (or the

14  replacement typewriter when the original model malfunctioned).

15        Defendants argue that prison regulations, regulations implemented facility wide and wholly

16  independent of any lawsuits filed by this plaintiff, prohibited plaintiff from receiving the replacement

17  typewriter.  Defendants further demonstrate that the original typewriter malfunctioned on its on

18  accord, and there is no allegation that any of the defendants purposefully broke the original

19  typewriter.  Defendants argue that when the typewriter malfunctioned, prison regulations simply

20  prohibited plaintiff from receiving a newer model with memory in excess of the amount permitted

21  in the regulations.

22        "Within the prison context, a viable claim of First Amendment retaliation entails five basic

23  elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because

24  of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

25  First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

26  goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

27

28

**James C. Mahan**
**U.S. District Judge**

1    Plaintiff must provide evidence "that he was retaliated against for exercising his

2    constitutional rights and that the retaliatory action does not advance legitimate penological goals,

3    such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.

4    1994). A court "should 'afford appropriate deference and flexibility' to prison officials in the

5    evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*

6    *v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

7    The court finds that defendants permitted plaintiff to retain possession of his ML-500 model

8    typewriter even though this model exceeded a memory of 20,000 characters. New prison

9    regulations, implemented for reasons wholly independent of this particular plaintiff filing any

10   lawsuits, prohibited typewriters with a memory of more than 20,000 characters. Defendants

11   permitted plaintiff to keep his typewriter, even though it would be prohibited under the new

12   regulations, because it had been grandfathered-in.

13   The regulations, see AR 711.01 § 1.10.2, also stated that when a typewriter with a memory

14   of over 20,000 characters malfunctioned and became inoperable a new model that exceeded the

15   memory limits would not be permitted. Plaintiff's typewriter became inoperable and plaintiff elected

16   not to have it repaired due to high costs. Plaintiff was not permitted to have a new model that exceed

17   the memory limits. The defendants refusal to permit plaintiff to have a new typewriter that exceeded

18   memory limits had nothing to do with plaintiff's previous lawsuits. Defendants were simply

19   enforcing a prison regulation and advancing legitimate penological interests. Defendants possessed

20   no retaliatory motive.

21   Additionally, the court finds that there was no chilling of plaintiff's First Amendment rights.

22   This plaintiff is a particularly litigious plaintiff. Since the filing of this lawsuit, plaintiff has filed

23   at least seven other lawsuits in this district. *See Burriola et al v. Baca*, et al 3:08-cv-00149-ECR-

24   RAM; *Burriola v. State of Nevada et al*, 3:10-cv-00168-LRH-WGC; *Burriola v. State of Nevada*,

25   3:1-cv-00261-LRH-VPC; *Burriola v. Palmer et al*, 3:10-cv-00344-LRH-VPC; *Burriola v. Palmer*

26   *et al*, 3:10-cv-00357-LRH-VPC; *Burriola v. Mosley et al*, 3:10-cv-00438-LRH-RAM; *Burriola v.*

27   *Palmer et al*, 3:11-cv-00708-RCJ-WGC.

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1      The court grants summary judgment in favor of defendants on count 1.

2      **B.    Count 5**

3      Plaintiff argues that he was prohibited from using the legal mail protocol for corresponding

4   with his sister and that mail from his sister was subject to an improper seizure.  Defendants argue

5   that plaintiff was not authorized to use the legal mail protocol for correspondence with his sister

6   because he was not a co-party in any lawsuit with her at the relevant time.  Defendants further argue

7   that plaintiff was permitted to use the general mail to correspond with his sister at all relevant times.

8      Prisoners have "a First Amendment right to send and receive mail."  *Witherow v. Paff*, 52

9   F.3d 264, 265 (9th Cir. 1995) (per curiam).  Prison regulations concerning incoming mail are

10   analyzed under the *Turner* factors.  *See Thornburgh v. Abbott*, 490 U.S. 401-411-13 (1989).  The

11   *Turner* factors are: (1) "whether the governmental objective underlying the regulations at issue is

12   legitimate and neutral, and that the regulations are rationally related to that objective"; (2) "whether

13   there are alternative means of exercising the right that remain open to prison inmates"; (3) "the

14   impact that accommodation of the asserted constitutional right will have on others (guards and

15   inmates) in the prison"; and, (4) "the existence of obvious, easy alternatives." *Id.* at 414-18; *Turner*

16   *v. Safely*, 482 U.S. 78 (1987).

17      The court finds that each factor weighs in favor of defendants.  Defendants seized plaintiff's

18   mail because he was not a co-party with his sister in any litigation.  Defendants confirmed this fact.

19   The seizure of mail was in complete accordance with NDOC regulations.  *See* AR 722.  All of

20   Polson's mail was properly seized.  At all relevant times, plaintiff was permitted to correspond with

21   Polson via the general correspondence protocol.  Plaintiff even spoke with Polson on the phone at

22   relevant times.  Defendants simply prohibited plaintiff from sending and receiving correspondence

23   to his sister via the legal correspondence protocol because at all relevant times there were not co-

24   parties to any lawsuit.

25      The court finds that the NDOC mail regulations are legitimate and neutral and that they are

26   rationally related to a legitimate penological interest–general mail is opened and inspected for the

27   safety of other prisoners and prison officials whereas privileged mail, such as legal, mail is not

28

**James C. Mahan**
**U.S. District Judge**

1   inspected.  The court further finds that NDOC regulations permit prisoners to communicate via the

2   mail.  The court finds that defendants did not violate plaintiff's First Amendment right to use the

3   mail and summary judgment is granted in favor of all defendants.

4   **IV.     Objections to Magistrate Judge Order**

5        Plaintiff has filed objections to a magistrate judge's order.  In the order, (doc. # 190), the

6   magistrate judge permitted defendants to file renewed motions for summary judgment after the

7   remand from the Ninth Circuit.  Plaintiff argues that defendants should not be able to file new

8   motions for summary judgment.

9        The court agrees with the magistrate judge.  After reviewing the Ninth Circuit order, the court

10  finds that the remand permitted this court to make new factual findings via summary judgment.  The

11  objection is overruled.

12       Plaintiff also objects to the magistrate judge order that requires plaintiff to properly sign his

13  name to his pleadings.  Plaintiff argues that based on the Uniform Commercial Code, he could sign

14  a name other than his given name.  The court finds the objection nonsensical and it is overruled.

15       The court further finds that plaintiff's motions to show cause (docs. ## 202-203) and motion

16  to strike (doc. # 206) are moot in light of the findings in section III *supra*.

17       Accordingly,

18       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for

19  summary judgment (doc. # 191) be, and the same hereby, is GRANTED.  Defendants shall submit

20  a judgment consistent with this order.

21       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff's objections to

22  a magistrate order (doc. # 193) be, and the same hereby, are OVERRULED and DENIED.

23       IT IS FURTHER ORDERED that plaintiff's motion for order to show cause (doc. # 202) be,

24  and the same hereby, is DENIED as moot.

25       IT IS FURTHER ORDERED that plaintiff's motion for order to show cause (doc. # 203) be,

26  and the same hereby, is DENIED as moot.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

1    IT IS FURTHER ORDERED that plaintiff's motion to strike (doc. # 206) be, and the same

2 hereby, is DENIED as moot.

3         DATED August 12, 2013.

4

5

6    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**